# UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND
### (SOUTHERN DIVISION)

CHAMBERS OF
THE HONORABLE GINA L. SIMMS
UNITED STATES MAGISTRATE JUDGE



6500 CHERRYWOOD LANE
GREENBELT, MARYLAND 20770

August 5, 2022

LETTER TO COUNSEL

RE:     *George K., Jr. v. Kijakazi, Acting Commissioner of Social Security*
        Civil No. GLS 21-01223

Dear Counsel:

Pending before this Court are cross-motions for summary judgment, filed by Plaintiff George Francis K. Jr., and the Social Security Administration. (ECF Nos. 17, 18). The Plaintiff also filed a reply brief. (ECF No. 19). Upon review of the pleadings and the record, the Court finds that no hearing is necessary. *See* Local Rule 105.6. (D. Md. 2021).

The Court must uphold the decision of the Social Security Administration ("SSA" or "the Agency") if it is supported by substantial evidence and if the Agency employed proper legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). The substantial evidence rule "consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Craig*, 76 F.3d at 589. This Court shall not "re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment" for that of the SSA. *Id.* For the reasons set forth below, I will deny the motions, reverse the Commissioner's decision in part, and remand the case back to the SSA for further consideration.

## I.     BACKGROUND

Plaintiff filed a Title II application for a period of disability and disability insurance benefits, and a Title XVI application for supplemental security income, on August 18, 2018. In both applications, the Plaintiff alleges that disability began on January 1, 2018. (Tr. 16). These claims were initially denied on January 2, 2019, and upon reconsideration, denied again on May 2, 2019. (*Id.*). On May 21, 2019, Plaintiff filed a written request for a hearing, which was granted. The hearing was conducted on September 24, 2020, by an Administrative Law Judge ("ALJ"). (*Id.*). On November 13, 2020, the ALJ found that Plaintiff was not disabled under sections 216(i) and 223(d) of the Social Security Act. (Tr. 18-29). On April 9, 2021, the Appeals Council denied Plaintiff's request for review, and the ALJ's decision became the final and reviewable decision of the SSA. (Tr. 1). *See also* 20 C.F.R. § 422.210(a).

*George K., Jr. v. Kijakazi, Acting Commissioner of Social Security*
Civil No. GLS 21-01223
August 5, 2022
Page 2

## II.      ANALYSIS PERFORMED BY THE ADMINISTRATIVE LAW JUDGE

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  An individual is deemed to have a disability if his/her "physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work . . . which exists in significant numbers in the region where such individual lives or in several regions of the country." 42 U.S.C. § 423(d)(2)(A).

To determine whether a person has a disability, the ALJ engages in the five-step sequential evaluation process set forth in 20 C.F.R. §§ 404.1520(a); 416.920(a).  *See e.g., Barnhart v. Thomas*, 540 U.S. 20, 24-25 (2003); *Mascio v. Colvin*, 780 F.3d 632, 634-35 (4th Cir. 2015).  The steps used by the ALJ are as follows: step one, assess whether a claimant has engaged in substantial gainful activity since the alleged disability onset date; step two, determine whether a claimant's impairments meet the severity and durations requirements found in the regulations; step three, ascertain whether a claimant's medical impairment meets or equals an impairment listed in the regulations ("the Listings").  If the first three steps are not conclusive, i.e., a claimant's impairment is severe but does not meet one or more of the Listings, the ALJ proceeds to step four.  At step four, the ALJ assesses the claimant's residual functional capacity ("RFC").  A claimant's RFC is the most that a claimant could do despite her/his limitations, through consideration of claimant's "'medically determinable impairments of which [the ALJ is] aware,' including those not labeled severe at step two."  *Mascio*, 780 F.3d at 635 (quoting 20 C.F.R. § 416.945(a)).  Also at step four, the ALJ analyzes whether a claimant could perform past work, given the limitations caused by her/his impairments.  Finally, at step five, the ALJ analyzes whether a claimant could perform jobs other than what the claimant performed in the past, and whether such jobs exist in significant numbers in the national economy.  *See* 20 C.F.R. §§ 404.1520(a)(4)(i) - 404.1520(a)(4)(v), 416.920(a).

 At steps one through four, it is the claimant's burden to show that she is disabled.  *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); *Monroe v. Colvin*, 826 F.3d 176, 179-80 (4th Cir. 2016).  If the ALJ's evaluation moves to step five, the burden then shifts to the SSA to prove that a claimant has the ability to perform work and, therefore, is not disabled.  *Hunter v. Sullivan*, 993 F.3d 31, 35 (4th Cir. 1992).

Here, the ALJ evaluated Plaintiff's claim by following the sequential evaluation process outlined above. (Tr. 18-29).  At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since January 1, 2018, the alleged onset date of Plaintiff's disability. (Tr. 18).  At step two, the ALJ found that Plaintiff suffered from the following severe impairments: affective mood disorder, anxiety related disorder, ADHD, substance use disorder, trichotillomania, osteoarthritis of both knees and the right wrist, arthropathies, and obesity.  (Tr. 19).  The ALJ found these impairments were severe because these impairments significantly limit the Plaintiff's

*George K., Jr. v. Kijakazi, Acting Commissioner of Social Security*
Civil No. GLS 21-01223
August 5, 2022
Page 3

ability to perform basic work activities as required by SSR 85-28. (*Id.*). However, at step three the ALJ also determined that none of Plaintiff's impairments or combination of impairments met or medically equaled one or more of the Listings. (Tr. 19-21). Taking into account Plaintiff's severe impairments, the ALJ next assessed the claimant's RFC. Despite Plaintiff's severe impairments, the ALJ determined that Plaintiff had the RFC to:

> perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the claimant can never climb ladders, ropes, or scaffolds, occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl. The claimant can occasionally push and pull with bilateral lower extremities. The claimant can frequently handle and finger with the right upper extremity. The claimant must avoid concentrated exposure to hazards, such as dangerous machinery and unprotected heights. The claimant can perform simple, routine tasks, requiring no more than occasional changes in the work setting and occasional judgment or decision-making, with no production rate for pace of work. The claimant can tolerate occasional interaction with the general public and co-workers.

(Tr. 21). At step four, the ALJ found that Plaintiff was unable to perform past relevant work. (Tr. 27). Before making a finding regarding step five, the ALJ conducted a hearing. At that hearing, a vocational expert ("VE") testified about whether a hypothetical person with the same RFC as the Plaintiff would be precluded from performing the Plaintiff's past relevant work. (Tr. 64-65). The VE testified that this hypothetical individual would not be able to perform Plaintiff's past work as actually or generally performed. (*Id.*). The VE also testified that the hypothetical individual would be able to perform light work as a photocopy machine operator, clerical checker, and as an office helper. (Tr. 65). At step five, after crediting the VE's opinion, the ALJ ultimately determined that Plaintiff was not disabled. (Tr. 28).

## III.   DISCUSSION

In requesting summary judgment, Plaintiff contends that the ALJ's decision is not supported by substantial evidence because the ALJ: (1) failed to properly evaluate the medical opinion evidence of record in a manner that was consistent with 20 C.F.R. §§ 404.1520c, 416.920c; and (2) erroneously evaluated Plaintiff's subjective complaints regarding his physical and mental limitations. (ECF No. 17-1, "Plaintiff's Motion," pp. 19-30). Regarding his subjective complaints, Plaintiff makes the following specific arguments. First, regarding his physical limitations, the ALJ erred by considering only Plaintiff's treatment history and not considering the objective evidence or his ADLs. (*Id.*, pp. 30-31). Second, regarding his mental limitations, the ALJ effectively required him to substantiate the intensity, persistence, and limiting effects of his subjective complaints about his mental health limitations with objective medical evidence. (*Id.*, p. 31). Third, to the extent the ALJ considered ADLs in evaluating his subjective complaints regarding his mental limitations, she failed to consider the extent to which Plaintiff can perform these ADLs. (*Id.*; ECF No. 19, pp. 608). Fourth, the ALJ improperly characterized the record in reviewing

*George K., Jr. v. Kijakazi, Acting Commissioner of Social Security*
Civil No. GLS 21-01223
August 5, 2022
Page 4

Plaintiff's mental health symptoms.  (*Id.*, pp. 31-32).  Fifth, the ALJ improperly drew negative inferences about Plaintiff's symptoms due to Plaintiff's alcohol use.  (*Id.*, p. 32).

The SSA counters that the ALJ properly evaluated Plaintiff's subjective complaints.  (ECF No. 18-1, pp. 5-18).

I carefully reviewed the arguments and the record.  I find persuasive Plaintiff's second argument that the ALJ failed to properly evaluate Plaintiff's subjective complaints regarding his mental health limitations by requiring Plaintiff to substantiate his subjective complaints with objective evidence.  I also find persuasive Plaintiff's third argument that the ALJ improperly assessed his ADLs.  Accordingly, I find that remand is appropriate, for the reasons set forth below.

When evaluating whether a claimant is disabled, an ALJ must engage in a two-step analysis of a claimant's subjective statements "about [her] impairments and symptoms." *Lewis v. Berryhill*, 858 F.3d 858, 866 (4th Cir. 2017); *see also* 20 C.F.R. §§ 404.1529(b)-(c), 416.929(b)-(c).  At step one, the ALJ considers whether objective medical evidence exists of a condition that could reasonably be expected to produce the claimant's "alleged symptoms" *Id.*  Next, assuming that the claimant satisfies this initial requirement of showing a medically determinable impairment, the ALJ proceeds to step two.  At step two, the ALJ must evaluate the intensity and persistence of the claimant's symptoms to determine the extent to which they limit the claimant's ability to work. *Id.* §§ 404.1529(c), 416.929(c).  In evaluating the intensity, persistence, and limiting effects of an individual's symptoms, the ALJ is to consider "all of the evidence presented," including a claimant's: (a) prior work history; (b) statements about her symptoms; (c) evidence from medical sources; and (d) observations.  *Id.*  In so evaluating, an ALJ examines a claimant's ADLs, medication, and treatment to relieve symptoms, among other factors.  *Id.*  At this second step, the ALJ assesses the credibility of a claimant's statements about her symptoms "and their functional effects." *Lewis*, 858 F.3d at 865-66.  The regulations also instruct that an ALJ should consider "whether there are any inconsistencies in the evidence and the extent to which there are any conflicts between [a claimant's statements] and the rest of the evidence."  20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4).

In performing this two-step analysis, an ALJ must keep in mind the medical condition at issue.  If the medical condition is like fibromyalgia, then the symptoms may not be supported by objective evidence.  *Arakas v. Comm'r, Soc. Sec. Admin.*, 983 F.3d 83, 97 (4th Cir. 2020) (ALJ "may not rely on objective medical evidence (or lack thereof)—even as just one of multiple factors—to discount a claimant's subjective complaints regarding symptoms of fibromyalgia **or some other disease that does not produce such evidence**")(emphasis supplied); *see also* SSR 16-3p, 2016 WL 1119029, at *4 (Mar. 16, 2016)("[s]ymptoms cannot always be measured objectively through clinical or laboratory diagnostic techniques").  In those circumstances, it is improper for an ALJ to rely upon objective medical evidence to discount a claimant's subjective complaints about her symptoms.  *Arakas*, 983 F.3d at 97; *see also Hines v. Barnhart*, 453 F.3d 559, 561 (4th Cir. 2006) (holding that the ALJ improperly required objective evidence of claimant's pain because Sickle Cell Disease does not produce such objective evidence).  As a corollary, if a claimant suffers from a disease or condition for which there is objective medical

4

*George K., Jr. v. Kijakazi, Acting Commissioner of Social Security*
Civil No. GLS 21-01223
August 5, 2022
Page 5

evidence that supports or refutes its existence, then an ALJ may consider that evidence in combination with other evidence in the record. *Patricia P. v. Kijakazi*, Civ. No. TJS-21-565, 2022 WL 683088, at *3 (D. Md. Mar. 8, 2022); *James A. v. Kijakazi*, Civ. No. JMC-20-01992, 2021 WL 4975178, at *3 (D. Md. Oct. 26, 2021).

In either scenario, an ALJ may not reject a claimant's subjective statements about the intensity and persistence of her pain **solely** because there is no objective medical evidence to support them. *Arakas*, 983 F.3d at 95; *see also Hines*, 453 F.3d at 561; s*ee also* 20 C.F.R. § 404.1529(c)(emphasis supplied). Put another way, at step two, a claimant may rely exclusively on "subjective evidence to prove the degree to which [her] symptoms affect [her] ability to work." *Carolyn L. v. Kijakazi*, Civ. No. TJS-20-3686, 2022 WL 897137, at *3 (D. Md. Mar. 28, 2022). Finally, the ALJ's decision "must contain specific reasons for the weight given to the individual's symptoms, [and] be consistent with and supported by the evidence[.]" 2016 WL 1119029, at *9. However, if an ALJ is going to reject a claimant's subjective statements as incredible or inconsistent with the evidence, it is important for the ALJ to make a finding regarding a claimant's credibility and to specifically refer to the evidence upon which the ALJ relies to reach her credibility determination. *Hammond v. Heckler*, 765 F.2d 424, 426 (4th Cir. 1985); *see also Carolyn G. v. Kijakazi*, Civ. No. ADC-20-1363, 2021 WL 2982129, at *5 (D. Md. July 15, 2021).

As a preliminary matter, the Court must first determine whether Plaintiff's mental health impairments are the type of medical condition that can be supported by objective medical evidence. *See also Carollyn S. v. Kijakazi*, Civ. No. ADC-20-2552, 2021 WL 4170431, at *8 (assessing first whether claimant's medical conditions produced objective medical evidence). In his summary judgment motion, Plaintiff does not explicitly argue that his mental health impairments cannot be proven by objective medical evidence. (Plaintiff's Motion, pp. 31-32). However, this Court finds that mental health impairments are not necessarily always supported by objective medical evidence. *See, e.g.*, *Poulin v. Bowen*, 817 F.2d 865, 873 (D.C. Cir. 1987)(mental health impairments are not "readily amenable" to substantiation by objective testing because "unlike a broken arm, a mind cannot be x-rayed"); *Marshall v. Berryhill*, Civ. No. WHO-19-00306, 2020 WL 1531358, at *11 (N.D. Cal. Mar. 31, 2020) (ALJ erred in requiring objective evidence of mental health impairments because psychiatric conditions necessarily depend on a claimant's self-reporting).

*Arakas*, *supra*, is instructive. In *Arakas*, the claimant suffered from fibromyalgia, a disease that the Fourth Circuit opined has "symptoms [that are] entirely subjective, with the exception of trigger-point evidence." 983 F.3d at 97 (citation omitted). Thus, "normal clinical and laboratory results" are irrelevant to the severity, persistence, or limiting effects of the disease. *Id*. The Fourth Circuit held that the ALJ erred by increasing the claimant's burden of proof by discrediting the claimant's subjective complaints regarding the severity, persistence, and limiting effects of her symptoms. *Id*. According to the Fourth Circuit, the claimant was entitled to rely exclusively on subjective complaints to prove that her symptoms were so severe as to prevent her from working a full eight-hour day. *Id*. Accordingly, remand was required.

Additionally, in *Stoker v. Saul*, 833 F. App'x 383, 386 (4th Cir. 2020), the Fourth Circuit

*George K., Jr. v. Kijakazi, Acting Commissioner of Social Security*
Civil No. GLS 21-01223
August 5, 2022
Page 6

found that an ALJ erred by rejecting the claimant's subjective statements because they were unsupported by objective medical evidence.  The Fourth Circuit explained that if the objective medical evidence fails to support the claimant's statements, the ALJ "must make a finding on the credibility of the individual's statements based on a consideration of the entire case record," and build an accurate and logical bridge from the evidence to the ALJ's conclusion.  *Id*. at 386.  Thus, *Stoker* stands in part for the proposition that when objective evidence fails to support a claimant's statements, an ALJ must base his or her finding on the credibility of a claimant's statements on the entire case record and build an accurate logical bridge between the evidence and the ALJ's conclusion.  *Id.*; *see also Petry v. Comm'r, Soc. Sec. Admin.*, Civil No. SAG 16-464, 2017 WL 680379, at *2 (D. Md. Feb. 21, 2017) (ALJ should build "an accurate and logical bridge from the evidence to his conclusion") (further citation omitted).

Finally, in *Testamark v. Berryhill*, 736 F. App'x 395, 398–99 (4th Cir. 2018), the Fourth Circuit found that because "symptoms of mental illness may wax and wane over the course of treatment," the fact that a claimant may appear cooperative, etc., on some occasions is "not inconsistent with the conclusion that [he] is unable to work," so an ALJ should look at the treatment history as a whole to see the "broader import."  *Id.* at 398-99 (citing *Garrison v. Colvin*, 759 F.3d 995, 1017-18 (9th Cir. 2014)).  Thus, *Testamark* stands in part for the proposition that mental health impairments should be considered as a whole, not based on isolated symptoms on a particular day.  *Id.*; *see also Arakas*, 983 F.3d at 101-102 (holding that ALJ erred by failing to consider the "waxing and waning" nature of fibromyalgia in discrediting the claimant's subjective complaints).

In the instant case, at step two of the sequential evaluation process, the ALJ found that Plaintiff suffered from the following severe impairments: affective mood disorder, anxiety related disorder, ADHD, substance use disorder, trichotillomania, osteoarthritis of both knees and right wrist, arthropathies, and obesity.  (Tr. 19).  The ALJ considered Plaintiff's subjective statements about his mental impairments.  First, the ALJ found that Plaintiff testified that he takes medication for his severe depression, severe anxiety, ADHD, and bipolar disorder.  (Tr. 22).  The ALJ also cited to a report where Plaintiff stated that he was anxious around crowds, experienced panic attacks, and quickly became "disorganized and overwhelmed" around other people.  (Tr. 20, 600).  The ALJ found that Plaintiff reported becoming inattentive easily.  (Tr. 20).  The ALJ also found that Plaintiff reported on February 27, 2020, that he would miss five days per month of work due to his mental impairments.  (Tr. 25).  At the first step of analyzing Plaintiff's subjective statements, the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms."  (Tr. 22).

At step two, the ALJ considered Plaintiff's statements in concert with the other evidence in the record, including his mental status examinations (MSE) and his ADLs. With regard to the MSEs, the ALJ found that overall, when Plaintiff was sober and following treatment recommendations, he had "normal mental status exams" and reported doing well.  (Tr. 22).  The ALJ found that in December 2017, March 2018, September 2018, December 2018, March 2019, June 2019, November 2019, February 2020, April 2020, and May 2020, July 2020, August 2020, and September 2020, Plaintiff had "normal" mental status exams, but did not explain what she

*George K., Jr. v. Kijakazi, Acting Commissioner of Social Security*
Civil No. GLS 21-01223
August 5, 2022
Page 7

meant by "normal." (Tr. 24-26). The ALJ found that Plaintiff reported that he was doing "well" or "great" or "good" in April 2018, September 2018, November 2019, and February 2020. (Tr. 24-25). In reviewing Plaintiff's MSEs, the ALJ made the following additional specific findings. In September 2018, Plaintiff reported worsening ADHD. (Tr. 24). In December 2018, Plaintiff was stable "except in the area of alcohol abuse." (Tr. 24). In March 2019, Plaintiff had trouble focusing and was "dysphoric and irritable." (*Id.*). In June 2019, Plaintiff reported being inattentive and was noted to be anxious. (Tr. 25). In April 2020, Plaintiff reported drinking from stress due to the Covid-19 pandemic. (*Id.*). In May 2020, Plaintiff reported significant anxiety and a "possible panic attack." (Tr. 26). In July 2020, Plaintiff reported drinking, overdosing, and going through withdrawal. (*Id.*). The ALJ also found that Plaintiff relapsed in his alcohol use disorder and sought treatment for detox in December 2017, December 2018, October 2019, and July 2020. (Tr. 24-26). Regarding Plaintiff's ADLs, the ALJ found that Plaintiff was able to: (1) do some "cooking, cleaning, and laundry;" (2) use a bus for public transportation; (3) "shower and bathe by himself" despite pain; (4) "dress himself," and (5) "prepare microwaveable meals." (Tr. 20). The ALJ also found that Plaintiff "has help when doing laundry." (Tr. 20).

Regarding step two of the analysis, I find that the ALJ improperly discredited Plaintiff's statements about the severity, persistence, and limiting effects of his symptoms, when the ALJ found that his statements "[were] not entirely consistent with the medical evidence and other evidence in the record." (Tr. 22).

The following two examples establish how the ALJ erred. First, in evaluating Plaintiff's subjective complaints regarding his mental health the ALJ focused exclusively on the results of Plaintiff's MSEs and rejected Plaintiff's subjective testimony and statements, as being inconsistent with the results of those examinations.[1] (Tr. 24-26). Plaintiff, however, was "entitled to rely exclusively on subjective evidence" to prove the severity, persistence, and limiting effects of his symptoms without the requirement of objective evidence to support his complaints. *Arakas*, 983 F.3d at 96; *see also Hines*, 453 F.3d at 564 and *Stoker* 833 F. App'x at 386. Thus, the ALJ erred in discrediting Plaintiff's subjective testimony regarding Plaintiff's mental limitations because they were not supported by objective medical evidence. In addition, the ALJ erred in relying upon Plaintiff's intermittent reports of "doing well" to reject Plaintiff's subjective complaints regarding his mental health symptoms. (Tr. 24-25). The symptoms of mental illness "may wax and wane over the course of treatment," so Plaintiff's occasional reports of doing well are "not inconsistent with the conclusion that [he] is unable to work." *Testamark v. Berryhill*, 736 Fed. App'x at 398-99. As in *Arakas*, the SSA is correct that the ALJ considered other evidence; however, the ALJ "effectively required" objective evidence by placing "undue emphasis" on the lack of objective evidence supporting Plaintiff's complaints. *Arakas*, 983 F.3d at 97. Therefore, the ALJ improperly increased Plaintiff's burden of proof. *Id.* at 96. To the extent that the ALJ considered other evidence including Plaintiff's ADLs, she erred as follows.

---

[1] The ALJ further erred by improperly rejecting Plaintiff's subjective complaints concerning his mental health impairments, without making a finding regarding Plaintiff's credibility and specifically point to the evidence upon which she relied to make that finding. *Hammond*, 765 F.2d at 426; *see also Monroe*, 826 F.3d at 189 (holding ALJ failed to build accurate and logical bridge to conclusion that claimant's testimony lacked credibility).

*George K., Jr. v. Kijakazi, Acting Commissioner of Social Security*
Civil No. GLS 21-01223
August 5, 2022
Page 8

Second, the ALJ only considered the types of daily activities Plaintiff could perform, without explaining the extent to which Plaintiff could perform such activities and how those activities supported her adverse credibility determination. *Stoker*, 833 F. App'x at 386 ("If the claimant has such a condition or impairment, then the ALJ must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's ability to perform basic work activities."); *Brown v. Comm'r Soc. Sec. Admin.*, 873 F.3d 251, 269 (4th Cir. 2017) (ALJ's failure to explain how claimant engaging in activities of daily living showed that claimant could sustain a full-time job and perform the tasks required by light work required remand). In addition, the ALJ did not explain how these activities undermined Plaintiff's subjective complaints. *See Arakas*, 983 F.3d at 100. The Court cannot perform a meaningful review of the evidence because the ALJ failed to "build an accurate and logical bridge from the evidence to [her] conclusion" that Plaintiff's daily activities undermine Plaintiff's subjective complaints of his mental health impairments. *Stoker*, 833 F. App'x at 386 (internal quotation marks and citations omitted). Because the ALJ did not explain the extent to which Plaintiff was able to perform activities of daily living, and because the ALJ did not explain how those daily activities made Plaintiff's subjective complaints incredible, the ALJ erred.

In sum, the ALJ improperly discredited Plaintiff's subjective statements about the severity, persistence, and limiting effects of his symptoms, which runs afoul of *Arakas*. In addition, the ALJ failed to analyze the extent to which Plaintiff could perform activities of daily living despite his symptoms. Accordingly, remand is warranted. On remand, the ALJ should provide an explanation of how she evaluated Plaintiff's subjective statements, providing an "accurate and logical bridge" from the evidence to her conclusions. *See Petry*, 2017 WL 680379, at *2.

## IV.   CONCLUSION

For the reasons set forth above, both parties' summary judgment motions (ECF Nos. 17, 18) are **DENIED**. In addition, consistent with sentence four of 42 U.S.C. § 405(g), the Agency's judgment is **REVERSED IN PART** due to inadequate explanation. The case is **REMANDED** for further proceedings in accordance with this opinion. I express no opinion as to whether the ALJ's ultimate finding that Plaintiff is not disabled, and therefore, not entitled to benefits, is correct. The Clerk of the Court is directed to **CLOSE** this case.

Despite the informal nature of this letter, it should be flagged as an opinion and docketed as such. A separate Order follows.

Sincerely,

_____/s/_____
The Honorable Gina L. Simms
United States Magistrate Judge